IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

JANET MURRAY,

    Plaintiff,

v.    CV 106-094

AMEX ASSURANCE COMPANY,

    Defendant.

**O R D E R**

Before the Court in the captioned matter is Defendant's motion for summary judgment as to the sole cause of action in the case: a claim of bad faith refusal to pay pursuant to O.C.G.A. § 33-4-6. Upon consideration of the parties' briefs, the record evidence, and the relevant law, Defendant's motion for summary judgment is **GRANTED** for the following reasons.

### I.   FACTUAL BACKGROUND

On December 25, 1999, Plaintiff Janet Murray, who was 48 years old, was injured in an automobile accident caused by Jerry Wren, an underinsured motorist. (Def.'s Am. St. of Undisputed Facts, ¶ 1.) Plaintiff suffered severe injuries to her ankles and was taken to the Medical College of Georgia for treatment. (Pl.'s Dep. at 57-58.)

Plaintiff was covered under an automobile insurance policy issued by Defendant AMEX Assurance Company ("AMEX") at the time of the accident. (Def.'s Am. St. of Undisputed Facts, ¶ 2). On January 10, 2000, Plaintiff, through counsel, informed AMEX that she planned to file a claim for underinsured motorist coverage not only against her own policy but also against her mother's automobile insurance policy with AMEX since she lived with her parents. (Pl.'s Exs. 1A & 1B, doc. no. 17.)

On June 2, 2000, AMEX informed Plaintiff that it needed to verify her residence since the accident report listed a different address for her. (Id., Ex. 1D.) Plaintiff's deposition was taken on July 26, 2001, at which time Plaintiff testified that she had maintained a separate apartment from her mother's residence since November of 1995, and, at that time, she had moved her belongings (including furniture, cookware, utensils and clothing) out of storage and into the apartment. (Pl.'s Dep. at 24-25, 30.) Plaintiff paid the rent and utilities of the apartment. (Id. at 35.) However, her driver's license and voter registration card listed her mother's residence as her own. (Id. at 50, 54.) She also received most of her mail (excluding the utility bills for the apartment) at her mother's house. (Id. at 35, 42, 52-53.) Nevertheless, Plaintiff testified that at the time of the

accident, she spent the night at her mother's house only once every three or four weeks. (Id. at 45.) She did not pay rent or utilities at her mother's house. (Id. at 49.) Finally, Plaintiff told the police officer, the ambulance service, emergency room personnel and the hospital that her residence was her apartment on the night of the accident. (Id. at 54, 57-58.) Indeed, on the night of the accident, Plaintiff had planned to return to her apartment for the evening. (Id. at 59.)

AMEX tendered the policy limits under Plaintiff's own insurance policy but contested her claim under her mother's policy because, in light of the maintenance of a separate apartment, it disputed whether Plaintiff lived with her mother. (Aff. of R. Eason, ¶¶ 5-6; Aff. of Beverly Sturzl, ¶¶ 4-5.) Plaintiff initiated a lawsuit concerning the accident in the State Court of Richmond County on December 4, 2001. While AMEX continued to offer the policy limits of $19,000 on Plaintiff's own insurance policy, AMEX filed a motion for summary judgment in the state court action on the issue of whether it was liable under Plaintiff's mother's policy. (Doc. No. 14.) The motion for summary judgment was apparently denied, and two trials took place in the state court - one involving liability and the other involving policy coverage. In the trial to determine coverage, a jury determined that

Plaintiff was in fact a resident of her mother's home. (Def.'s Am. St. of Undisputed Facts, ¶ 6.) Ultimately, judgment was entered in favor of Plaintiff against Jerry Wren in the amount of $224,110.15, plus $50,000 punitive damages. (Id. ¶ 7.)

After the trials on coverage and liability, AMEX offered the full amount ($44,000) available under both Plaintiff's policy and her mother's policy. (Eason Aff. ¶ 7; Sturzl Aff. ¶ 6.) Plaintiff refused to accept AMEX's offer of compensation. (Eason Aff. ¶ 8; Sturzl Aff. ¶ 7.)

On May 20, 2006, Plaintiff filed the instant action in the Superior Court of Richmond County, claiming that AMEX has, in bad faith, refused to pay the policy limits of the two policies. Plaintiff seeks not only the policy limits but the entire $274,110.15 judgment, plus interest and attorney's fees. Defendant removed the case to this Court and now seeks summary judgment on Plaintiff's bad faith claim.

## II. SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The Court must view the facts in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor," <u>United States v. Four Parcels of Real Property</u>, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993). If the <u>movant</u> bears the burden of proof at trial, that party "must show that, on all the essential elements of its case, . . . no reasonable jury could find for the non-moving party." <u>Four Parcels</u>, 941 F.2d at 1438. On the other hand, if the <u>non-movant</u> has the burden of proof at trial, the movant may carry the initial burden in one of two ways--by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970) and <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in

opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If--and only if--the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. Again, how to carry this burden depends on who bears the burden of proof at trial. If the movant has the burden of proof at trial, the non-movant may avoid summary judgment only by coming forward with evidence from which a reasonable jury could find in its favor. Anderson, 477 U.S. at 249. If the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carries its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains

evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1116-17. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond by affidavits or as otherwise provided by Fed. R. Civ. P. 56.

The clerk has given the non-moving party notice of the summary judgment motion, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. No. 12.) Therefore, the notice requirements of Griffith v. Wainwright, 772 F.2d 822 (11th Cir. 1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

### III. LEGAL ANALYSIS

Plaintiff alleges that AMEX acted in bad faith when the company initially denied the claim under her mother's policy citing a residency dispute. (Compl. ¶ 6.) Plaintiff further alleges that once judgment was entered in state court in her favor, AMEX became subject to liability for the entire judgment, despite the policy limits, based upon its bad faith

7

refusal to pay. (Id.) AMEX now seeks summary judgment, contending that Plaintiff has failed to offer any evidence to support a reasonable inference that the company conducted itself in bad faith.

In Georgia, the penalties contained in O.C.G.A. § 33-4-6 are the exclusive remedies for an insurer's bad faith refusal to pay insurance proceeds. Colonial Oil Indus., Inc. v. Underwriters Subscribing to Policies Nos. T031504670 & T031504671, 910 F. Supp. 655 (S.D. Ga. 1995). Under O.C.G.A. § 33-4-6, an insured is entitled to damages if the insurer's refusal to pay under an insurance policy is in "bad faith." Bad faith is a "frivolous and unfounded denial of liability." Albergotti v. Equitable Life Assurance, 48 F. Supp. 290 (S.D. Ga. 1942). If an insurer had reasonable grounds to contest a claim, then it cannot be held liable under this section. Rice v. State Farm Fire & Cas. Co., 208 Ga. App. 166, 430 S.E.2d 75 (1993); Independent Life & Accident Ins. Co. v. Thornton, 102 Ga. App. 285, 292-93, 115 S.E.2d 835, 841 (1960) (stating that if a reasonable and probable cause for refusing to pay exists, the insurer's good faith would be a complete defense to an action under the statute).

"[T]he insured bears the burden of proving that the refusal to pay the claim was made in bad faith." Southern Fire

8

& Cas. Ins. Co. v. Northwest Ga. Bank, 2090 Ga. App. 867, 867, 434 S.E.2d 729, 730 (1993). Bad faith claims will fail if the insurance company had any reasonable ground to contest the claim and if there was a disputed question of fact. Id.; Moon v. Mercury Ins. Co., 253 Ga. App. 506, 559 S.E.2d 532 (2002).

A similar case out of the Georgia Court of Appeals is illustrative here. In Moon v. Mercury Ins. Co., 253 Ga. App. 506, 559 S.E.2d 532, the insured brought an action against her insurance company seeking statutory "bad faith" penalties. The Georgia Court of Appeals determined that the insurance company had established a complete defense to the bad faith claim because there had been a valid factual dispute concerning whether the injured passenger seeking coverage lived in the house of the policy owner. Id. at 508-09, 559 S.E.2d at 535. The court further stated: "'[I]t is the very fact that certain factual issues regarding the merits of a claim are in genuine conflict that causes there to be no conflict, as a matter of law, whether an insurance company had reasonable grounds to contest a particular claim.'" Id. at 509, 559 S.E.2d at 535 (quoting Rice, 208 Ga. App. at 169, 430 S.E.2d at 78).

In the case at bar, Plaintiff is charged with the burden of proving that AMEX acted in bad faith when it denied Plaintiff's claim under her mother's insurance policy. For

9

purposes of the instant motion for summary judgment, the issue is whether there is a genuine issue of material fact respecting whether AMEX acted in bad faith. AMEX contends that the evidence demonstrating a dispute over Plaintiff's true residence justified, as a matter of law, its refusal to pay.

In the case, AMEX provided an affidavit by one of its employees, Beverly Sturzyl, who stated that the company was aware that Plaintiff maintained her own apartment and received her mail at that particular address. Plaintiff's own deposition testimony demonstrates that there was a genuine conflict of evidence regarding her true residence at the time of the accident. Indeed, the fact of residency was not subject to summary determination in state court; it could only be resolved through a jury trial.

In response, Plaintiff reiterates the facts tending to show that her residence was with her mother at the time of the accident. Aside from these facts, Plaintiff points to no other evidence of AMEX's bad faith in this case. Yet, by reiterating the facts tending to show that Plaintiff resided at her mother's residence, Plaintiff skirts the true issue. The issue is not whether Plaintiff was in fact a member of her mother's household, but whether AMEX had a reasonable basis to believe that she was not a member of her mother's household.

The fact that a jury trial was conducted on the issue of residency bears out AMEX's claim that it had reasonable cause to dispute Plaintiff's residency. Moreover, the conflicting evidence presented by Plaintiff on the issue through her own testimony demonstrates a genuine issue of fact with regard to her residency. As stated by the Georgia Court of Appeals: "Penalties for bad faith are not authorized where the insurance company has any reasonable ground to contest the claim *and where there is a disputed question of fact.*" Moon, 253 Ga. App. at 507, 559 S.E.2d at 534-35 (emphasis in original) (quoted source omitted).

In short, AMEX has shown that, in viewing the evidence in the light most favorable to Plaintiff, it had valid and reasonable cause to deny Plaintiff's insurance claim under her mother's policy; thus, such evidence serves as a complete defense to the bad faith claim made against it. Stated another way, no reasonable juror could conclude that AMEX did not have a reasonable cause to deny the claim based upon its knowledge of a separate residence and the attendant facts involving this residence. AMEX's decision to contest the claim on the basis that Plaintiff was the resident of a separate apartment was reasonable, and no evidence has been provided that would support a contrary conclusion. Accordingly, AMEX's motion for summary judgment on Plaintiff's

11

bad faith claim must be granted.

IV. CONCLUSION

Based upon the foregoing, Defendant is entitled to summary judgment on Plaintiff's claim under O.C.G.A. § 33-4-6. Accordingly, the Clerk is instructed to **ENTER JUDGMENT** in favor of Defendant and **CLOSE** the case.

**ORDER ENTERED** at Augusta, Georgia, this 30 day of May, 2007.

HONORABLE LISA GODBEY WOOD
UNITED STATES DISTRICT JUDGE